# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                                            **Case No. 13-CR-225**

**STEPHEN IVORY**
    **Defendant.**

## DECISION AND ORDER

The government charged defendant Stephen Ivory with making a false statement in connection with the purchase of a firearm and possessing a firearm as an unlawful drug user. Defendant moved to suppress the gun, arguing that the police unlawfully detained and patted him down in the course of investigating a shooting to which he was a witness. The magistrate judge handling pre-trial proceedings in this case held an evidentiary hearing, at which the shooting scene commander and the two officers who dealt with defendant testified, then issued a recommendation that the motion be denied. Specifically, the magistrate judge concluded that the officers did not detain defendant at the scene of the shooting and that defendant consented to being patted down before the officers questioned him in a squad car. Defendant objected, and I held a de novo hearing regarding the consent issue, receiving further testimony from the officer who conducted the pat-down. See Fed. R. Crim. P. 59(b)(3). I now grant the motion.

## I. FACTS

On August 27, 2013, Milwaukee police responded to a fatal shooting in the area of 27th and Burleigh Streets, shutting down traffic, securing the scene, and canvassing the area to identify witnesses and suspects. During the canvass, officers secured a Chicago Subs shop,

identifying six witnesses, including defendant.  Three officers were stationed inside the shop to make sure no one came in or left, to ensure that the witnesses did not taint their statements by conferring, and to protect the witnesses' identities.  The witnesses remained in the shop for between 30 and 60 minutes.  The scene commander, Sgt. Wesam Yangham, secured squad cars so the witnesses could be questioned separately.  Five of the six witnesses were questioned in squads, the sixth inside the sub shop.

After about an hour, Yangham told Officers Jose Ramirez and Chad Boyack to take defendant to their squad car for an interview.  Ramirez approached defendant, who was standing outside the sub shop holding a bag of food, and told defendant to follow him to the car.  Ramirez pointed out the car, and defendant walked in front of Ramirez towards it.  Once they arrived at the squad car, Ramirez told defendant that before he placed defendant in the squad car he would "need to pat him down just for personal procedures."[1]  (Oct. 20, 2014 Evid. Hr'g Tr. [R. 40] at 14.)  Defendant said something to the effect of "okay," but Ramirez could not remember his exact words.  Ramirez tapped defendant's elbows, defendant put his hands up,[2] and Ramirez proceeded to pat him down, discovering a firearm in his waistband.  Defendant was not at the time of the pat-down a suspect, just a witness, and the officers had no reason to believe that he was armed or dangerous.

---

[1]Ramirez could not recall the exact words he used.  On cross-examination, he agreed that he told defendant that he "would have to pat him down before putting him in the squad car."  (R. 40 at 20-21.)

[2]At the de novo hearing, the parties disputed whether defendant put his hands up on his own, or whether Ramirez guided his hands up.  On re-direct examination, Ramirez testified: "At the time he was holding his food, so I remember tapping his elbows; and he just put them right up."  (R. 40 at 23.)  I find this answer, offered in response to an open-ended question from the government, the most reliable evidence on this point.

2

At the hearing before the magistrate judge, Officers Ramirez and Boyack both testified that it was their policy to pat someone down before placing him in the squad car for safety reasons. (June 12, 2014 Evid. Hr'g Tr. [R. 21] at 41, 59.) Boyack's report also documents the pat-down – "as is customary for all officers' safety" – but says nothing about consent. (June 12, 2014 Hr'g Ex. 101.) At the de novo hearing, Ramirez testified that Boyack called him as he was writing the report to ask Ramirez exactly what happened. Ramirez also reviewed the report, and he had no corrections or additions. (R. 40 at 18.)

## II. DISCUSSION

The government bears the burden of justifying this pat-down. See United States v. Jackson, 598 F.3d 340, 346 (7th Cir. 2010) ("The government has the burden of proving consent by a preponderance of the evidence."); see also United States v. Lemons, 153 F. Supp. 2d 948, 953 (E.D. Wis. 2001) ("The government bears the burden of establishing that there was reasonable suspicion to stop and pat down a suspect."). The government argues that defendant consented to the entire encounter, waiting around the sub shop to be questioned, following the officer's directive to walk towards the squad, and agreeing to the pat-down by saying something to the effect of "okay" and raising his hands. Defendant responds that even if he did agree to stick around to be questioned,[3] he did not agree to be searched. His verbal and physical response to the officer's declaration that he was going to pat defendant down constituted mere acquiescence to the officer's display of authority. I agree with defendant.

---

[3] Before the magistrate judge, defendant argued that he was unlawfully detained at the sub shop while the officers investigated. Because the motion can be resolved on the narrower ground discussed in the text, I need not determine whether defendant was seized prior to the pat-down.

3

While Ramirez could not recall the exact words he used, it was established at the de novo hearing that he did not <u>ask</u> defendant if he could pat him down; rather, he <u>told</u> defendant he that "would have to pat him down" or "need[ed] to pat him down" before placing defendant in the back of the squad car.[4] (R. 40 at 14, 20-21.) The government argues that in the context of this encounter a question was unnecessary, but it provides no authority that voluntary consent can be derived from a declaration rather than a request. See <u>United States v. Cole</u>, 195 F.R.D. 627, 632-33 (N.D. Ind. 2000) (collecting cases holding that consent cannot be obtained from declarative or imperative statements regarding what the police want or need to do). This argument also overlooks the police-dominated nature of the scene. More than 20 officers had been dispatched to the area of the shooting, and defendant and his fellow witnesses had been kept there for about an hour while the police investigated.

Defendant's response – something to the effect of "okay" or "alright" – constituted acquiescence rather than agreement. See <u>Bumper v. North Carolina</u>, 391 U.S. 543, 548-49 (1968) ("When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.") (footnote omitted); see also <u>Cole</u>, 195 F.R.D. at 633 (indicating that when the police say they want to undertake some activity, agreement to such an imperative statement is often seen as submission to a claim of authority) (citing 3 Wayne R. LaFave, <u>Search and Seizure –</u>

---

[4]At the hearing before the magistrate judge, Ramirez testified that he may have asked defendant if he could pat him down, although he could not remember for sure. (R. 21 at 32-33.) At the de novo hearing before me, however, he made no such claim, and the government agreed that it was reasonable to find that Ramirez said he needed to pat defendant down before placing him in the squad. (R. 40 at 27.) I find that Ramirez made a declarative statement; he did not ask for permission to frisk defendant.

4

A Treatise on the Fourth Amendment, § 8.2(a) at 642 (1996)). A person in defendant's situation cannot be expected to argue with the officer or resist the pat down in order to preserve his Fourth Amendment rights. Defendant's act of raising his hands – after Ramirez tapped his elbows – is also most reasonably construed as submission rather than consent. See id. at 634 (considering whether the officer physically touched the defendant in determining consent).

Finally, although the inquiry is an objective one, it is also telling that the officers themselves did not view this as a consent search. Boyack's report, prepared with Ramirez's input and approval, says nothing about consent.[5] Instead, the officers indicated that this search was conducted pursuant to policy.

The government makes no attempt to justify the pat down under Terry v. Ohio, 392 U.S. 1 (1968), and the facts would not support such an argument in any event. It is undisputed that the police had no reason to believe that defendant was armed and dangerous at the time of the pat down. See, e.g., United States v. Ruffin, 448 F. Supp. 2d 1015, 1018-20 (E.D. Wis. 2006) (holding that police could not pat down a witness to a robbery absent reasonable suspicion that he was armed and dangerous). As indicated, Ramirez conducted the pat-down, based not on individualized suspicion, but on a policy of frisking anyone placed in the back of the squad.

Before the magistrate judge, the government argued that it was reasonable for the officers to pat defendant down for their own safety before placing him in the squad, even if they did not have reasonable suspicion that he was armed and even if he did not consent. In

---

[5]The magistrate judge found that defendant's reliance on the report was misplaced because it was prepared from Boyack's view point, and only Ramirez was privy to the conversation he had with defendant. However, at the de novo hearing, Ramirez testified that Boyack asked for his input as he prepared the report.

5

support, the government cited state court cases holding that the police may frisk a person before giving him a ride in a squad car. See, e.g., People v. Tobin, 219 Cal. App.3d 634 (Cal. Ct. App. 1990) (holding, over a dissent, that the exigency created by a need to transport stranded motorists off the freeway justified a pat down); People v. Otto, 284 N.W.2d 273 (Mich. Ct. App. 1979) (holding that the police could frisk a hitchhiker where, in lieu of issuing a citation, the officer decided to give him a ride off the freeway to a location where he could hitchhike legally); State v. Evans, 618 N.E.2d 162 (Ohio 1993) (holding that the driver of a motor vehicle may be subjected to a brief pat-down search for weapons where the officer had a lawful reason to detain the driver in a patrol car).

I have doubts that the requirements of Terry may be evaded by an officer's decision to place an individual in his squad car. In United States v. Glenn, 152 F.3d 1047, 1049 (8th Cir. 1998), the court rejected a similar argument:

> Despite the absence of any suspicion that Glenn was armed and presently dangerous, the Government would have us hold Thompson's decision to place Glenn in his patrol car during this routine stop was sufficient to justify the pat-down search solely because this decision placed Thompson in a potentially vulnerable position. The Government's argument is contrary to Terry's reasonable suspicion requirement and would permit law enforcement officers to pat down all traffic offenders simply by choosing to place them in the back seat of patrol cars during traffic stops. An officer's decision to place a traffic offender in the back of a patrol car does not create a reasonable, articulable suspicion to justify a pat-down search that the circumstances would not otherwise allow.

In any event, the state cases cited by the government are distinguishable on their facts. In Tobin, the court found that the officer had a duty to transport the three occupants of a stranded car; none of them were licensed to drive, one appeared physically unable to do so, and the tow truck was not equipped to carry them all. The court further noted that it was 7:30 p.m. on New Year's Day, and that it would have been dangerous and illegal to allow the men

6

to walk on the freeway in the dark. 219 Cal. App. 3d at 638-39. Similarly, in Otto, the court found that it was reasonable for the officer to transport the hitchhiker and his companion off the freeway, where it was illegal for them to be. 284 N.W.2d at 275-76. In the present case, Ramirez admitted that it was not "absolutely necessary" to place defendant in a squad car for questioning. (R. 40 at 16.) While the officers may have preferred to conduct the interview there, the record shows that another witness from the sub shop was interviewed inside the shop (where s/he presumably did not have to be patted down for officer safety). (R. 21 at 13.) Certainly, it would not have been illegal for defendant to remain where he was, unlike the situation faced by the officers in Tobin and Otto. Finally, Evans turned on the fact that the officer had a lawful basis for detaining the suspect during a traffic stop because he could not produce his driver's license. See State v. Lozada, 748 N.E.2d 520, 524-25 (Ohio 2001) (limiting Evans). Here, the police had no basis for detaining defendant.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion to suppress (R. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is scheduled for **STATUS** on **Friday, November 14, 2014, at 1:30 p.m.**

Dated at Milwaukee, Wisconsin, this 4th day of November, 2014.

/s Lynn Adelman
LYNN ADELMAN
District Judge

7